Glenn R. Kantor, California State Bar No. 122643
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, California 91324
Telephone: (818) 886-2525
gkantor@kantorlaw.net

Appearing *Pro Hac Vice*

Attorneys for Plaintiff
Rebecca Bartee

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| REBECCA BARTEE,<br><br>                    Plaintiff,<br>         v.<br><br>BANNER HEALTH AND AETNA<br>HEALTH INSURANCE COMPANY,<br><br>                    Defendant. | No.<br><br>**COMPLAINT** |

For her claims against Banner Health and Aetna Health Insurance Company ("Aetna"), Plaintiff Rebecca Bartee ("Ms. Bartee" or "Plaintiff") alleges as follows:

### *Jurisdiction, Venue And Parties*

1.    This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA").

2.    Plaintiff Rebecca Bartee is a resident of Surprise, Arizona in Maricopa County in the State of Arizona.

3.    Plaintiff was at all relevant times a participant under the Aetna Preferred Provider Organization (PPO) Medical Plan ("Plan") (Member ID#: 240535857), a welfare benefit plan regulated by ERISA.

4.   Aetna administered benefit claims under the Plan.

5.   Plaintiff is informed and believes that Aetna, the claims administrator, is a plan fiduciary doing business in the State of Arizona, is authorized to transact and transacts business in the State of Arizona, and can be found in the State of Arizona.

6.   Defendant can be found in this judicial district and the Plan is administered in this judicial district.

7.   This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

8.   Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

### *Introduction and Background of Proton Beam Radiation Therapy*

9.   Proton beam radiation therapy ("PBRT" or "proton therapy") has been recognized for decades by the medical community as an established, medically appropriate treatment for cancer, including head and neck cancers.

10.   The first hospital-based proton-beam center in the United States was at the Loma Linda University Medical Center, which began operation in 1990.

11.   Through local coverage determinations or the guidelines adopted by various Medicare Advantage organizations (MAOs), Medicare generally covers PBRT for high-grade (WHO grade III) anaplastic oligodendroglioma ("high-grade brain glioma").

12.   PBRT is the most effective form of radiation therapy for many types of cancer.

13.   PBRT destroys cancer cells by preventing them from dividing and growing, like conventional X-ray radiation.

14.   The difference between PBRT and conventional X-ray radiation is that protons deposit much of their radiation directly in the tumor and then stop.

15.   That allows patients to receive higher doses, which can be more effective, while reducing damage to healthy tissues that surround the tumor.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

16.     The physical properties of protons are different from the physical properties of X-rays.

17.     Protons are large, positively charged sub-atomic particles that penetrate matter to a finite depth.

18.     X-rays are electromagnetic radiation that penetrate completely through tissue.

19.     Protons can be conformed to release much of their energy at precise depths so they can target tumors inside the body, depositing much of their radiation exactly at the tumor site.

20.     X-rays release their maximum dose of radiation quickly after penetrating the skin, damaging healthy tissue and organs on their way to the tumor and again as they pass through the body beyond the tumor.

21.     The goal of treatment is to deliver the proper dose of radiation to the tumor while limiting the dose received by the surrounding healthy tissue.

22.     To deposit the proper amount of energy into the tumor, X-rays must irradiate much of the healthy tissue in front of it, known as an "entrance dose," and then continue to penetrate through the tumor and irradiate much of the healthy tissue behind it, known as an "exit dose."

23.     To deliver the proper dose to a tumor, a radiation oncologist must "work around" the tumor by using multiple X-ray beams, delivering the highest dose where the beams intersect, but delivering low to medium "entrance" and "exit" doses to surrounding healthy tissue. In contrast, protons enter the patient at a low dose, then, at a precise depth, they deliver a large burst of energy. Immediately after this burst, they stop completely. To treat the entire tumor, additional protons are sent in at lower doses. In this way, protons completely irradiate the tumor while limiting the dose to the nearby healthy tissue.

24.     Proton treatment delivers a dose in a more accurate way, a more efficient way, and spares more of the surrounding healthy tissue.

25.     Since protons have a low "entrance dose" and essentially no "exit dose," the volume of normal tissue receiving radiation with PBRT is typically reduced by a factor of 2-3 when compared to even the most modern X-ray treatment plan.

26.     Proton therapy is the most effective form of treatment for high-grade brain gliomas because it minimizes the radiation dose to vital bodily organs and functions, such as the gastrointestinal system or urinary tract. Many respected cancer facilities and providers, including but not limited to, MD Anderson at the University of Texas, Harvard Medical School/Massachusetts General Hospital, Northwestern University, Baptist Hospital's Miami Cancer Institute, Loma Linda University, University of Florida, University of Maryland, Mayo Clinic, Emory University, Case Western Reserve University, Washington University in St. Louis, University of Washington, New York Proton Center, and the Texas Center for Proton Therapy recommend and use PBRT on a regular basis.

27.     The medical community has found proton beam therapy radiation treatment to be a generally accepted standard of medical practice for the treatment of high-grade brain gliomas.

28.     Other insurers, including Medicare, cover PBRT as a safe and effective treatment that is not "investigational."

29.     There is overwhelming evidence that PBRT is safe and effective.

30.     PBRT is a generally accepted standard of medical practice for the treatment of cancer, including high-grade brain gliomas, within the medical community.

31.     PBRT has been around and well-accepted for over 30 years.

32.     The Food and Drug Administration ("FDA") approved PBRT in 1988 with the following specific statement of indications for intended use: "The [Proton Therapy System] is a medical device designed to produce and deliver proton beam for the

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

treatment of patients with localized tumors and other conditions susceptible to treatment by radiation."

33. The American Society for Radiation Oncology (ASTRO), the National Comprehensive Cancer Network (NCCN), and other nationally-recognized medical organizations have validated the safety and effectiveness of PBRT.

34. Numerous peer-reviewed studies have validated the safety and effectiveness of PBRT.

35. There is randomized Level I dual-institutional trial evidence to support the use of proton therapy for high-grade brain gliomas.

36. This also sets proton therapy apart from conventional X-ray radiation, as historically the radiation oncology field has not performed many randomized trials testing whether or not one technology is better than another.

37. Because radiation therapy is based on well understood principles of physics, a randomized trial is not necessary to know whether or not more energy will be deposited into healthy tissue with X-rays than with proton therapy.

38. That X-rays will irradiate more surrounding healthy tissue than proton therapy is a scientific fact.

39. Instead, the field is interested in whether or not more energy can be delivered to the tumor and less to healthy tissue.

40. In contrast, there is no randomized data or prospective data to support the use of X-ray radiation to treat high-grade brain gliomas, the default fallback to which Aetna has forced its subscribers to resort by virtue of its systematic denial of PBRT for the treatment of high-grade brain gliomas.

41. The medical community has found PBRT treatment to be both medically necessary and a superior form of treatment than established alternative treatments for the treatment of high-grade brain gliomas.

42. Most importantly, Plaintiff's treating provider, Dr. Sujay Vora of Mayo found PBRT to be the best form of treatment for Plaintiff.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

**General Allegations**

2       43.     Plaintiff incorporates by reference all preceding paragraphs as though fully

3   set forth herein.

4       44.     Plaintiff is a 29-year-old woman who was diagnosed with high-grade

5   (WHO grade III) anaplastic oligodendroglioma ("high-grade brain glioma").

6       45.     Plaintiff sought care and treatment at Mayo Clinic's Proton Beam Program

7   ("Mayo").

8       46.     In 2019 it was recommended by her treating physicians at the Mayo Clinic

9   that Plaintiff be treated with PBRT.

10      47.     Plaintiff's doctors determined that PBRT was the best course of treatment

11  for Plaintiff.

12      48.     Plaintiff's doctors concluded that PBRT was medically necessary for

13  Plaintiff because PBRT, as opposed to Intensity-Modulated radiation therapy (IMRT),

14  greatly reduces the risk of creating a radiation-induced malignancy in her brain.

15      49.     Rebecca initiated a pre-service claims and appeals process in July 2019

16  and a post-service claims process in February 2020.

17      50.     On July 18, 2019, Aetna denied Rebecca's pre-service claims for PBRT on

18  the grounds that: "We [Aetna] used the Clinical Policy Bulletin (CPB): Proton Beam and

19  Neutron Beam Radiotherapy. Based on CPB criteria information we have, we are

20  denying coverage for proton beam radiotherapy. Medical studies have not *proven* that

21  this procedure is effective for treatment of your condition."

22      51.     On July 25, 2019, Aetna denied Rebecca's first level pre-service appeal for

23  PBRT on the grounds that: "We used the Clinical Policy Bulletin (CPB): Proton Beam

24  and Neutron Beam Radiotherapy. Based on CPB criteria and the information we have,

25  we are denying coverage for proton beam radiotherapy. Medical studies have not proven

26  that this procedure is effective for treatment of your condition. This decision was made

27  utilizing the Aetna CPB referenced above."

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

52.    On February 27, 2020, Aetna denied Plaintiff's post-service claims for PBRT between September 3, 2019 and September 30, 2019.

53.    On October 26, 2020, Aetna denied Plaintiff's first level post-service appeal for "the billed amount of the claim [which] is $100,104.00" on the grounds that:

Clinical studies have not proven this procedure to be an effective treatment for her condition. Our review found that she had a diagnosis of oligodendroglioma. Per the criteria listed above, Banner Aetna considers proton beam radiotherapy experimental and investigational for oligodendroglioma in adults (over age 21) because its effectiveness for this indication has not been established. Therefore, criteria are not met, and the previous denial of coverage on procedure code 77523 is upheld.

54.    Aetna also appears to conclude that PBRT is experimental and/or investigational for Rebecca's diagnosis per its Clinical Policy ("CPB") Proton Beam and Neutron Beam Radiotherapy (Aetna's "Medical Policy").

55.    In all pre-service and post-service appeals, Plaintiff and her treating providers submitted extensive medical literature and analysis showing that proton therapy results in superior outcomes and reduced long-term side effects as compared with IMRT for her diagnosis.

56.    Dr. Sujay A. Vora's and Plaintiff's appeal submissions to Aetna make clear that the medical community has found that in Plaintiff's case PBRT is both medically necessary and a superior form of treatment, citing to numerous sources of established peer-reviewed literature proving this claim.

57.    For example, Dr. Vora's appeal submission on Plaintiff's behalf to Aetna states that PBRT is both medically necessary and a superior form of treatment for high-grade brain gliomas over IMRT:

In Ms. Bartee's case, my recommendation would be in favor of proton therapy over photon therapy using IMRT. 1) Proton therapy will provide meaningful improvement in neurocognition, short term memory due to

7
COMPLAINT

hippocampal sparing 2) Proton therapy will reduce the risk for secondary malignancies.

58.     In summary, Plaintiff's pre-service and post-service appeals to Aetna contained citations to and physical copies of at least nine peer-reviewed scientific studies, published between 2010 and 2020, all conclusively finding PBRT to be both medically necessary and a superior form of treatment than established alternative treatments (like IMRT) for the treatment of high-grade gliomas.

59.     On December 21, 2020, Plaintiff submitted her second level post-service appeal to Aetna.

60.     As of January 25, 2021, Aetna reversed its decision to deny the treatment received by the Plaintiff, to the extent that the denial was predicated on the grounds that the treatment was either experimental or was not established as the appropriate treatment for her condition.   While the claims submitted were for in excess of $100,000.00, the Aetna letter of January 25, 2021, (attached hereto as Exhibit "1") only referenced claims for $84,924.00.   The letter of January 25, 2021, agreed to process the claims pursuant to Plan terms.

61.     However, in the nearly seven months between the letter of January 25, 2021, and the present, neither the provider of the treatment, or Plaintiff, or her counsel, have received any communication regarding the reprocessing of the claims, or the decision regarding such reprocessing.   Pursuant to the applicable ERISA claims handling guidelines, Plaintiff's claims are now deemed exhausted for purposes of any pre-litigation appeal obligations.

62.     Plaintiff has communicated with Mayo to determine if Aetna has released any reimbursement relating to Plaintiff's PBRT treatment to Mayo. To date, Mayo indicates that it has not received any reimbursement associated with Plaintiff's PBRT treatment.

63.     Plaintiff has also not received any reimbursement from Aetna for her PBRT treatment at Mayo.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

64.     Plaintiff has performed all duties and obligations on Plaintiff's part to be performed under the Plan. To the extent that other requirements were not fulfilled, Plaintiff was excused from performing the same because of the doctrines of exhaustion, deemed exhausted, and of futility.

### *Relevant Plan Definitions*

65.     Plaintiff sought coverage for PBRT under the Plan, which includes a list of "Exclusions," which are deemed to be services that are not covered under the Plan.

66.     One such Exclusion is for services deemed "Experimental or Investigational" (the "E/I Exclusion"), where "Experimental or Investigational" is defined as:

A drug, device, procedure or treatment that we find is experimental or investigational because:

- There is not enough outcome data available from controlled clinical trials published in the peer-reviewed literature to validate its safety and effectiveness for the illness or injury involved.

- The needed approval by the FDA has not been given for marketing.

- A national medical or dental society or regulatory agency has stated in writing that it is experimental or investigational or suitable mainly for research purposes.

- It is the subject of a Phase I, Phase II or the experimental or research arm of a Phase III clinical trial. These terms have the meanings given by regulations and other official actions and publications of the FDA and Department of Health and Human Services.

- Written protocols or a written consent form used by a facility provider state that it is experimental or investigational.

- It is provided or performed in a special setting for research purposes.

67.     Radiation therapy is a procedure, and therefore, is not subject to FDA regulation.

9

68. The accelerators and other equipment used to generate and deliver PBRT are regulated by the FDA.

69. On February 22, 1988, the FDA approved the Proton Therapy System, and designated it as a Class II Device for radiological treatment.

70. This classification was codified at 21 C.F.R. § 892.5050 and describes the Proton Therapy System as a "device that produces by acceleration high energy charged particles (e.g., electrons and protons) intended for use in radiation therapy."

71. Thus, at least as of February 22, 1988, PBRT no longer fit within the E/I Exclusion to the Plan.

72. PBRT has long been recognized as an established, medically appropriate treatment for the treatment of cancer, including high-grade brain gliomas.

73. Plaintiff's request for PBRT falls outside of the Plan's exclusions for experimental or investigational services.

74. Under FDA regulations, an institutional review board (IRB) is "an appropriately constituted group that has been formally designated to review and monitor biomedical research involving human subjects." In accordance with FDA regulations, an IRB has the authority to approve, require modifications in (to secure approval), or disapprove research. This group review serves an important role in the protection of the rights and welfare of human research subjects.

75. As published in the Federal Register on January 15, 2009, (74 FR 2358), 21 CFR Part 56 (entitled "Institutional Review Boards") was amended with regard to IRB registration (21 CFR 56.106). This amendment required that each IRB in the United States that reviews FDA-regulated studies to register. IRB registration information is entered into an Internet-based registration system maintained by the Department of Health and Human Services (HHS) and can be accessed at http://www.clinicaltrials.gov.

76. Via this online registration system anyone is able to search all registered IRBs in the United States relating to PBRT regardless of whether it is currently active, completed, previously withdrawn, suspended or terminated, etc. A review of this

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

database of IRBs reveals 351 different IRBs that either are currently active or have been previously been completed or are no longer active. During the relevant time period, there were no active IRBs at Mayo or any other institution in the US studying the use of PBRT to treat anaplastic astrocytoma (high grade gliomas). Plaintiff's request for PBRT was not subject to review and approval by an IRB during the relevant time period.

77.     At the time that Plaintiff made her request for PBRT and Aetna made its benefit determination, PBRT was not subject to any ongoing clinical trials.

78.     The prevailing published peer-reviewed medical literature that was submitted to Aetna in support of Plaintiff's request for PBRT demonstrated that PBRT is not an experimental or investigational treatment as defined in the Plan.

79.     For example, one of the studies submitted as part of Plaintiff's appeal submission to Aetna was a 2017 study clearly concludes that: "Treatment planning studies have been performed to compare the target coverage, dose homogeneity and OAR [organ-at-risk] sparing using IMRT, VMAT and IMPT in patients with gliomas, with overall similar target coverage. The target homogeneity was found improved for VMAT and even more for IMPT as compared with IMRT. *As expected, a significant sparing of the OAR can be obtained using IMPT.*" (emphasis added; citation omitted)

80.     Two other cohort studies submitted by Plaintiff to Aetna concluded that "Patients with oligodendroglioma but not astrocytoma develop PsP earlier after protons compared to photons. PsP was associated with better PFS [progression free survival rate]." (citation omitted)  Another 2018 study concluded that "PBT is associated with improved OS [overall survival] compared to XRT [IMRT] for patients with gliomas." (citation omitted).

81.     The Plan contains an exclusion for services that are not "Medically Necessary" where the Plan defines "Medically Necessary" as follows:

Health care services that a provider exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

- In accordance with generally accepted standards of medical practice.

- Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease.

- Not primarily for the convenience of the patient, physician, or other health care provider.

- Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.

- "Generally accepted standards of medical practice" means "Standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community."

82. Proton therapy for high grade gliomas is medically necessary and is not excluded under the exclusion for services that are not medically necessary.

83. The rationales articulated by Aetna in its pre-service and post-service appeal denials of Plaintiff's claims for PBRT amount to the following: "Medical studies have not *proven* that this procedure is effective for treatment of your condition."

84. This rationale plainly ignores the overwhelming peer-reviewed medical literature that concludes that PBRT is safe, effective, and a superior form of treatment for high-grade brain gliomas.

### *Aetna's PBRT Clinical Policy*

85. Aetna drafted and implemented the PBRT Clinical Policy Bulletin, which at the time Aetna applied it to Plaintiff's requests for PBRT was most recently reviewed on March 14, 2019.

86. Aetna's PBRT Clinical Policy Bulletin was based on outdated medical evidence and ignored accepted medical peer-reviewed evidence that PBRT is safe and effective for the treatment of cancer.

87. The unreasonableness of the PBRT Clinical Policy is illustrated by the fact that Aetna considers PBRT "experimental and investigational" for most types of

cancers, including high-grade brain gliomas, in "adults (over age 21) . . . because its effectiveness for these indications has not been established" while on the other hand Aetna considers PBRT "medically necessary" to treat all "[m]alignancies in children (21 years of age and younger)," as well as certain listed types of tumors.

88.     Aetna's PBRT Clinical Policy Bulletin does not consider PBRT "experimental and investigational" when treating children (21 years of age and younger) and approves PBRT for these patients.

89.     There are no medical studies that support a conclusion that PBRT would be a proven, safe, and effective treatment for the same cancer in one age group but not the other.

90.     Aetna employs the PBRT Clinical Policy Bulletin as part of its prior authorization review and adjudication of members and beneficiaries' claims to deny claims for coverage of PBRT as "experimental or investigational" or not "medically necessary" without ever engaging in any reasonable review of clinical records prior to rendering the determination of coverage.

91.     Aetna drafts, adopts, and implements its PBRT Clinical Policy Bulletin— as it did here with respect to Plaintiff's requests and claims for PBRT—by relying upon outdated medical evidence, by ignoring contemporary medical evidence, and by taking a coverage position that plainly contradicts the standard of care in the medical community.

92.     Aetna's application of its PBRT Clinical Policy Bulletin to Plaintiff's requests and claims for PBRT is an improper substitute to Aetna's legal obligation to conduct an adequate, full, and fair review of member-submitted clinical records like Plaintiff's.

93.     Aetna did not provide Plaintiff with a full and fair review of her clinical records by appropriate medical directors (who have experience or training in the context of radiation oncology or who are board certified in the requisite medical specialty) prior to rendering its coverage determinations.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

COMPLAINT

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

94.     It is readily apparent that at no point during the claims and appeals processes that Aetna's medical reviewers considered any of the factors specific to Plaintiff's diagnosis but rather applied its blanket policy of denying proton therapy for high grade gliomas.

95.     It is also apparent that Aetna never addressed how its PBRT Clinical Policy Bulletin, with its outdated references, could possibly have reasonably provided a fair snapshot of whether PBRT was considered experimental/investigational in 2019 and 2020, which is the relevant time period related to Plaintiff's requests for PBRT.

96.     Aetna's reliance on its PBRT Clinical Policy Bulletin is merely a way for Aetna to categorically deny prior authorization requests and claims for reimbursement for PBRT to treat most cancers, including high-grade brain gliomas.

### *FIRST CAUSE OF ACTION*

### *FOR DENIAL OF PLAN BENEFITS UNDER ERISA*

97.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

98.     Plaintiff was covered under the Plan at all relevant times.

99.     Plaintiff's requested and performed treatment was covered under this group policy as it was medically necessary, constituted appropriate medical treatment, and was not experimental, investigational, or unproven.

100.    Defendant wrongfully denied Plaintiff's claim for PBRT in the following respects:

(a)     Wrongfully concluding PBRT was excluded as experimental or investigational, or not medically necessary, when in fact PBRT is a mainstream treatment which has been performed by reputable physicians for decades;

(b)     Failure to provide prompt and reasonable explanations of the bases relied on under the terms of the plan documents, in relation to the applicable facts and plan provisions, for the denial of Plaintiff's requests;

14

COMPLAINT

(c)     After Plaintiff's claims were denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary for Plaintiff to perfect her claim along with an explanation of why such material is or was necessary;

(d)     Failure to properly and adequately investigate the merits of Plaintiff's request and/or consider the information provided by Plaintiff;

(e)     Failure to consider the overwhelming medical evidence which showed that the requested treatment was medically necessary, safe, effective, and not investigational; and

(f)     Once having reversed its original basis of denial, failed to timely process the claims under the terms of the Plan.

101.    Plaintiff is prepared to amend to allege that, if she confirms in discovery, Defendant wrongfully denied the claim for benefits by other acts or omissions.

102.    Following the denial of the claims for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, or was excused from doing so due to Defendant's conduct, and performed all duties and obligations on her part to be performed.

103.    As a proximate result of the denial of benefits due Plaintiff, Plaintiff has been irreparably damaged.

104.    Plaintiff has been denied medically necessary treatment and left with a substantial sum of money to be paid by him out-of-pocket.

105.    As a further direct and proximate result of this improper determination regarding the medical claims, Plaintiff, in pursuing this action, has been required to incur attorneys' costs and fees.

106.    Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such attorneys' fees and costs paid by Defendant.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

107.     Due to the wrongful conduct of Defendant, Plaintiff is entitled to enforce her rights under the terms of the Plan and to clarify her rights to future benefits under the terms of the Plan.

### *SECOND CAUSE OF ACTION*
### *FOR EQUITABLE RELIEF*

108.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

109.     As a direct and proximate result of the failure of the Defendant to pay claims for benefits, and the resulting injuries and damages sustained by Plaintiff as alleged herein, Plaintiff is entitled to and hereby requests that this Court grant Plaintiff the following relief pursuant to 29 U.S.C. § 1132(a)(1)(B):

(a)     Restitution of all past benefits due to Plaintiff, plus prejudgment and post-judgment interest at the lawful rate; and

(b)     Such other and further relief as the Court deems necessary and proper to protect the interests of Plaintiff under the Plan.

### *Request for Relief*

Wherefore, Plaintiff prays for judgment against Defendant as follows:

1.  Payment of health benefits due to Plaintiff under the Plan;

2.  Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

3.  Payment of prejudgment and post-judgment interest as allowed for under ERISA; and

4.  For such other and further relief as the Court deems just and proper.

DATED:  August 17, 2021                    KANTOR & KANTOR, LLP

                                By:    /s/ Glenn R. Kantor
                                       Glenn R. Kantor
                                       Attorneys for Plaintiff
                                       REBECCA  BARTEE

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

17
COMPLAINT